UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAWNI BENNETT, individually and on behalf of all other similarly situated, | |
| Plaintiff, | Case No. 1:20-cv-06172 |
| v. | Judge John Robert Blakey |
| CELTIC INSURANCE COMPANY, CR INSURANCE GROUP, LLC, and JOEL ORTIZ, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tawni Bennett brings putative class-action claims alleging that Defendants called her personal cellular telephone, and those of the class members, using an automatic system and artificial voice recordings, in violation of the Telephone Consumer Protection Act (TPCA) and the Illinois Automatic Telephone Dialers Act (IATDA). [3]. Plaintiff initially sued just Celtic Insurance Company (Celtic), which she claimed "promotes and markets its services and products by authorizing calls to wireless phone uses in violation of the TCPA" and "directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused . . . the dissemination of the unwanted calls." *See* [1] at ¶¶ 13–14; [3] at ¶¶ 13–14. But, in response to Celtic's motion to

dismiss, consistent with this Court's standing order, Plaintiff filed a second amended complaint, adding Defendants CR Insurance Group, LLC and Joel Ortiz. *See* [15].

Defendant CR Insurance Group (CR) moves to dismiss all claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [29]. For the reasons explained below, this Court grants CR's motion.

## I. The Complaint's Allegations

Plaintiff is a Texas resident whose cell phone number is registered on the National Do-No-Call Registry. [15] at ¶¶ 10, 39. Since December 2019, she has received over one hundred unsolicited prerecorded phone calls attempting to sell her health insurance. *Id.* at ¶ 19. The bombardment of calls continued even after Plaintiff followed the prerecorded voice's instructions to "press 2" to stop receiving further calls. *Id.* at ¶ 27.

On two occasions, Plaintiff connected with the caller's live operators. *Id.* at ¶ 31. The live operators "identified themselves as sales agents who worked with Ambetter to sell an Ambetter plan," and one of them, referring to the product as "our plans," stated she was calling "with Ambetter" from "the call center." *Id.* Defendant Celtic, an Illinois company, offers Ambetter, the only policy referenced in the calls. *Id.* at ¶¶ 11, 31, 32, 35. A copy of the policy sent to Plaintiff by the sales agent "confirmed" that the "calls and product sold were from, or on behalf of Celtic." *Id.* at ¶ 34.

According to Plaintiff, Celtic "hires, authorizes, and pays" Defendants CR and Ortiz to sell its products via telemarketing. *Id.* at ¶¶ 11–13. CR is a company

"licensed and authorized" to promote and sell Celtic products, and Ortiz is a "licensed and authorized" Celtic insurance agent. *Id.* at ¶¶ 12–13. Additionally, "Defendants" do business, "maintain a principal place of business," "market their services," and "employ individuals" in Illinois. *Id.* at ¶ 9.

Plaintiff also alleges that "Celtic and/or CR" provided "at least interim instructions and day-to-day control over" the call-related actions of "CR and/or Ortiz," specified customer criteria, and "provide[d] or approve[d]" telemarketing scripts and insurance pricing information to Ortiz. *Id.* at ¶¶ 73–90. Additionally, she claims that "Celtic and/or CR were able to restrict or specify the geographic location and/or volume of the calls" and that "Defendants specified that the calls to Plaintiff should be directed to the Texas market" and that "calls should be directed to the Florida market as part of the subject telemarketing campaign as well." *Id.* at ¶ 75. She further alleges that "Defendants had access to the sales and customers" generated by unlawful telemarketing and "continue[d] to work with companies that perform illegal robocalling" despite being on notice of this suit. *Id.* at ¶¶ 79, 98.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a case as to any party over whom it lacks personal jurisdiction. A complaint need not include facts alleging personal jurisdiction, but, once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, a court

rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.*

In ruling on the motion, this Court "may consider written submissions from both parties," *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *1 (N.D. Ill. June 9, 2020) (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)), but resolves all factual disputes in favor of the plaintiff, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). When the defendant challenges this Court's exercise of jurisdiction via affidavits, the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 783. If the plaintiff fails to refute a fact contained in the defendant's affidavit, "that fact is accepted as true." *Shanahan*, 2020 WL 3058088, at *1 (quoting *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020 WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020)).

### III. Analysis

This case arises under both federal and Illinois law. Turning first to the federal statute, because the TPCA does not authorize nationwide service of process, this Court may exercise personal jurisdiction over the defendant "only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). As to the state law, the Illinois long-arm statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," *Tamburo*, 610 F.3d at 700; *see also* 735 Ill. Comp. Stat. 5/2-209(c). Thus, the statutory and constitutional inquiries merge, and the

4

Court asks only whether the exercise of personal jurisdiction over CR offends constitutional Due Process.

Under the Due Process Clause, this Court can properly exercise personal jurisdiction when the defendant possesses "minimum contacts" with the forum state such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts recognize two types of personal jurisdiction: general and specific. *Tamburo*, 601 F.3d at 701. Plaintiff argues that this Court can exercise both general and specific jurisdiction over CR, and CR challenges both assertions with a sworn declaration. This Court examines each type of personal jurisdiction in turn.

### A. General Personal Jurisdiction

General jurisdiction exists when the defendant's contacts with the forum state are "so constant and pervasive as to render it essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). With respect to corporations, the Supreme Court has expressly recognized only two places of general jurisdiction: the corporation's state of incorporation and its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). To establish any additional places of general jurisdiction, the defendant must engage in more than a "substantial, continuous, and systematic course of business." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (internal quotation omitted).

This Court cannot exercise general jurisdiction over CR. Both parties agree that CR is a Florida corporation and maintains its principal place of business in

Miami, Florida. [15] at ¶ 12. Plaintiff objects to CR's characterization of its Illinois business as "nominal" and speculates that CR may have directed more business to Illinois by contracting with other Illinois insurance companies, [33]. But she fails to support her objection with facts. And she concedes that CR has "no offices, employees, or independent contractor insurance agents in Illinois." [29-1] at ¶ 13. CR's contacts with Illinois fall far short of the beyond "continuous and systematic" level necessary to establish general jurisdiction.

### B. Specific Personal Jurisdiction

Specific jurisdiction arises from the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). It exists when the defendant has "purposefully directed" its activities "at residents of the forum," and the litigation "results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

In a class-action suit, "the named representatives" must be able to demonstrate "specific personal jurisdiction, but the unnamed members are not required to do so." *Mussat v. Iqvia, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). This Court therefore considers CR's alleged unlawful activities concerning Plaintiff. *See Shanahan*, 2020 WL 3058088, at *3 (focusing upon defendants' calls to the plaintiff); *see also Paldo Sign & Display Co. v. United Vending & Mktg., Inc.*, No. 13-CV-1896, 2014 WL 960847, at *3 (N.D. Ill. Mar. 11, 2014) (declining to exercise specific personal

6

jurisdiction over the defendant because the named class-action plaintiff did not allege that the defendant directed its complained-of unsolicited faxes to Illinois). And "any specific personal jurisdiction" over CR "must arise from the relevant phone call[s]." *See Shanahan*, 2020 WL 3058088, at *3.

CR's sworn declaration states that it did not call Plaintiff or engage in any of the telemarketing activities alleged in Plaintiff's complaint. [29-1] ¶¶7–8. Plaintiff concedes the point but counters that CR has established the required minimum contacts with Illinois because it entered into a contractual relationship with Celtic, an Illinois company, and allowed Illinois law to govern its contracts with both Celtic and Ortiz. [33]. These facts alone, however, do not suffice to create specific jurisdiction. *See Burger King*, 471 U.S. at 479, 482 (rejecting that "an individual's contract with an out-of-state party" or a choice of law provision "standing alone" can "automatically establish sufficient minimum contacts in the other party's home forum").

In *Burger King*, the Supreme Court found that specific jurisdiction over the defendant existed in Florida because his contractual relationship with Burger King's Miami headquarters "envisioned continuing and wide-reaching contacts" in Florida. *See Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479–80). The contract in that case required defendant to reach out to Burger King's headquarters for a multitude of affairs, including sending notices and payments and resolving disputes, and the contract emphasized that the defendant's "operations are conducted and supervised" from the headquarters. *See id.* at 479–81. Here, in contrast, Plaintiff

7

has not alleged any contractual obligation on CR's part to reach out to Illinois in any way, let alone on a continuing and wide-reaching basis.

## C. Jurisdiction Through Vicarious Liability

Beyond its personal actions, a defendant may avail itself of a forum state through the in-forum activities of its agent. *See Walden*, 571 U.S. at 285 ("[P]hysical entry into the State . . . through an agent . . . is certainly a relevant contact."). Here, Plaintiff argues that her allegations justify this Court's exercise of jurisdiction over CR based upon Ortiz's actual authority and apparent authority to conduct unlawful telemarketing and CR's after-the-fact ratification of Ortiz's calls. But this Court can only impute CR's personal jurisdiction from Ortiz's contacts if Ortiz himself actually possesses sufficient contacts with Illinois to justify the exercise of personal jurisdiction over him. And based upon the allegations, he does not.

Plaintiff alleges that Ortiz is an individual with his principal address in Florida. [15] at ¶ 13. Although Plaintiff claims that Ortiz is the insurance agent of Celtic, an Illinois company, she has not alleged any contractual duty on Ortiz's part to reach out to Illinois. Nor has she alleged that Ortiz ever did reach out to Illinois. She alleges that Ortiz called her cell phone, but she also alleges that she resides in Texas. *Id.* at ¶¶ 10, 24. Indeed, she alleges that "Celtic and/or CR" specified that the calls to Plaintiff "should be directed to the Texas market" and to the Florida market. *Id.* at ¶ 75. Given the lack of any allegation that Ortiz engaged in conduct directed toward Illinois, Plaintiff cannot justify this Court's exercise of personal jurisdiction over CR based upon Ortiz's conduct.

8

## IV. Conclusion

For the reasons explained more fully above, this Court grants Defendant CR's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction [29], dismisses Counts V, VI, VII, and VIII of the second amended complaint [15], and dismisses this case as to CR. For the same reasons, the Court finds that it lacks personal jurisdiction over Ortiz, dismisses Counts IX, X, XI, and XII of the second amended complaint [15], and dismisses this case as to Ortiz as well. *See Sun v. Asher*, 974 F.2d 1340 (7th Cir. 1992) (affirming sua sponte dismissal of claim based on personal jurisdiction where court had previously dismissed similar claim on same basis).

Dated: March 14, 2022                             Entered:

                                                  _____
                                                  John Robert Blakey
                                                  United States District Judge